756 N.W.2d 157 (2008)
276 Neb. 622
STATE of Nebraska, appellee,
v.
Michael J. GLOVER, appellant.
No. S-07-1108.
Supreme Court of Nebraska.
September 26, 2008.
*159 Thomas J. Garvey, Bellevue, for appellant.
Jon Bruning, Attorney General, and James D. Smith, Lincoln, for appellee.
HEAVICAN, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.
CONNOLLY, J.

SUMMARY
Michael J. Glover argues that the district court erred in denying his petition for postconviction relief without an evidentiary hearing. At a hearing on the State's motion to deny an evidentiary hearing, Glover offered and the court received his trial counsel's deposition. Glover's postconviction counsel offered the deposition to resist the State's motion. Relying on the deposition, the court decided factual questions and overruled Glover's claims of ineffective assistance of counsel at trial and on appeal.
We conclude that the court erred in relying on Glover's trial counsel's deposition that was not part of the case records and files. Because the case records and files fail to show that Glover is not entitled to relief for any of his claims, we remand for an evidentiary hearing.

BACKGROUND
In 2003, the State filed an information alleging that Glover had deliberately, or during an attempted robbery, killed Jesus Covarrubias. The State originally charged Glover with first degree murder and use of a deadly weapon to commit a felony. But in June 2004, under a plea agreement, Glover pleaded no contest to three charges: second degree murder, use of a deadly weapon to commit a felony, and robbery.

GLOVER'S PLEAS
In June 2004, the district court found that Glover had voluntarily pleaded no contest to the charges in the amended information and found him guilty. The prosecutor offered the following factual basis for the pleas: Glover and his codefendant, Damien Watkins, decided to rob Covarrubias, and "a gun was drawn" as they approached him. The prosecutor stated that the evidence showed Glover had drawn the gun. Although she acknowledged that Glover contested this fact, she stated that both defendants were presumed to be involved in the shooting under an aiding and abetting theory. She further stated that after Covarrubias displayed a knife, Glover shot him in the chest, killing him.
Before accepting Glover's pleas, the court asked him if he understood the maximum penalties that each offense carried. The court also stated that if it imposed consecutive sentences, it could sentence him to life plus 100 years' imprisonment. Glover's trial counsel asked the court to *160 clarify that a second degree murder conviction carried a minimum sentence of 20 years' imprisonment. Counsel also asked the court to clarify that a sentence for use of a deadly weapon must run consecutive to the murder sentence. The court verified that Glover's counsel had explained this to Glover and that he understood. The court did not explain the minimum sentences for the offenses of use of a deadly weapon or robbery. It did, however, ensure that Glover understood that he could appeal if he went to trial but that he could not necessarily appeal from a no contest plea. Glover stated that his counsel had explained these facts and that he understood.
When asked whether he was satisfied with his attorneys, Glover responded, "Not really." When asked why, he stated, "Because I just don't feel that they do their best to defend me." The court responded that it would not accept his plea and that the case would go to trial. Glover then stated that he would stand by his no contest plea because he did not want an automatic life sentence.

GLOVER'S SENTENCING
In April 2005, the court sentenced Glover to the following terms of imprisonment, with credit for time served: 40 years to life for the second degree murder conviction; 10 to 20 years for the use of a deadly weapon conviction, to run consecutive to his first sentence; and 15 to 20 years for the robbery conviction, to run concurrent with his first sentence.

GLOVER'S DIRECT APPEAL
Glover limited his appeal to an excessive sentence claim. The public defender's office represented Glover at trial and on appeal, our case No. S-05-528. This court granted the State's motion for summary affirmance.

GLOVER'S POSTCONVICTION ACTION
Glover's first petition for postconviction relief is not part of this record. But in May 2007, after Glover had filed his postconviction action, the State deposed Glover's trial counsel. In June, with different counsel, Glover filed his amended petition. He alleged that his trial counsel provided ineffective assistance at trial. He alleged that his counsel failed to obtain or investigate a recantation statement that Watkins had made in an April 2004 affidavit  before Glover pleaded no contest. Glover attached Watkins' affidavit to his postconviction petition. In the affidavit, Watkins averred that he had not murdered anyone and that he had fabricated his earlier statement that Glover had committed the murder, explaining that "[j]ust for notoriety, reputation, and teenage kicks, we both, myself and my co-defendant, made up the whole thing not knowing the full extent of the outcome."
Glover claimed that if his trial counsel had obtained the statement, his counsel could have developed a defense or negotiated a more favorable plea agreement. Glover further claimed that his trial counsel was ineffective in failing to (1) advise him of the penalties for his no contest pleas, (2) advise him of the effect his no contest plea would have on his right to appeal, and (3) move for withdrawal of Glover's pleas before sentencing, despite Glover's numerous requests. Glover claimed that the third failure deprived him of an appeal regarding withdrawal for his counsel's failure to visit with Watkins regarding exculpatory information.
Glover alleged that his appellate counsel was ineffective because he failed to assign as error the court's failure to advise Glover of his right to counsel. He claimed this failure foreclosed him from raising his trial counsel's failure to investigate Watkins' recantation. He also alleged that his *161 appellate counsel failed to raise the court's failure to advise Glover of the minimum sentences for use of a deadly weapon to commit a felony and robbery.

PROCEEDINGS TO DETERMINE WHETHER AN EVIDENTIARY HEARING WAS REQUIRED
Glover sought an evidentiary hearing. The State moved to deny Glover's petition without an evidentiary hearing. The State alleged that Glover's trial counsel was not ineffective, based largely on his counsel's deposition testimony regarding his actions in the case. At the hearing, the deputy county attorney offered the bill of exceptions from Glover's plea and sentencing hearings. He stated that Glover would be offering the deposition of his trial counsel. The records submitted by the State do not include the plea agreement or presentence investigation report.[1] When the court asked Glover's postconviction counsel if he were offering anything to resist the State's motion, he offered the deposition. He argued that Glover's trial counsel admitted in the deposition that he did not interview Watkins.
Like the State's motion, the court's order dismissing Glover's petition without an evidentiary hearing includes many factual statements from trial counsel's deposition that are not in the records submitted by the State. The court concluded that Glover's claims that his counsel was ineffective, both at trial and on appeal, had no merit.

ASSIGNMENTS OF ERROR
Glover assigns that the district court erred in denying his request for an evidentiary hearing and in dismissing his motion for postconviction relief.

STANDARD OF REVIEW
[1] In a postconviction action, we review for an abuse of discretion the procedures a district court uses to determine whether the prisoner's allegations sufficiently establish a basis for relief and whether the files and records of the case affirmatively show that the prisoner is entitled to no relief.[2]
[2, 3] An abuse of discretion occurs when a trial court bases its decision upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence.[3] A trial court abuses its discretion when its decision incorrectly applies or fails to comply with specific procedural rules governing the action.[4]

ANALYSIS
[4] The main issue presented by this appeal is procedural. Although the district court's rationales appear facially reasonable, it has created a procedural snarl. Glover argues that by denying him an evidentiary hearing after receiving his trial counsel's deposition, the court effectively allowed only his counsel to testify. He argues that by following that procedure, the court cut off his right to testify.
*162 The State argues that the court relied on the deposition of Glover's trial counsel because Glover offered it at the hearing on the State's motion to deny an evidentiary hearing. It contends that Glover cannot complain of error it invited the court to make. The State makes two alternative arguments: (1) Glover alleged only conclusions of law or fact; and (2) the records and files of the case affirmatively showed that Glover was not entitled to relief based on his allegations.
We conclude that the district court's failure to comply with the specific procedural requirements of Neb.Rev.Stat. § 29-3001 (Reissue 1995) is dispositive. That section mandates the following procedure for postconviction actions when a prisoner claims in a verified motion that a constitutional violation renders the judgment void or voidable:
Unless the motion and the files and records of the case show to the satisfaction of the court that the prisoner is entitled to no relief, the court shall cause notice thereof to be served on the county attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto.[5]
[5] Under this statute, we have recognized two exceptions to a district court's duty to grant an evidentiary hearing when the prisoner's factual allegations, if proved, show a violation of the prisoner's constitutional rights.[6] We have stated that a district court need not conduct an evidentiary hearing in the following circumstances: (1) When the prisoner alleges only conclusions of law or facts, and (2) when the files and records of the case affirmatively show that the prisoner is entitled to no relief.[7]
[6] We have further held that a district court has discretion to adopt reasonable procedures for determining what files and records it should review before granting a full evidentiary hearing.[8] In general, we have allowed the court to (1) order the State to respond to a prisoner's postconviction motion or to show cause why an evidentiary hearing should not be held, (2) allow the State to file a motion to deny an evidentiary hearing, and (3) hold a "records" hearing for receiving into evidence the relevant files and records that the court may need to review in considering whether to grant or deny an evidentiary hearing.[9] And if a court does not receive into evidence the relevant case records and files at a records hearing, the court should certify and include in the transcript the files and records it considered in denying relief.[10] But the district court's discretion must comport with the specific procedural rules mandated by § 29-3001. In the cited cases, the files and records that the district court received at the records hearings were limited to the prisoner's trial files and records.
[7] The phrase "files and records of the case" in § 29-3001 refers to existing files and records of the case before the prisoner filed a postconviction actionnot to testimony taken for the postconviction action. In State v. Flye,[11] we held that the district court did not err in overruling the *163 prisoner's postconviction motion based on the files and records of the case it received in a records hearing. We stated:
Where no controverted material issues of fact are presented, the facts as shown by the record are undisputed, the taking of oral testimony on the motion could not add to or detract from the information shown by the court's files and records, and the court is satisfied that the prisoner is entitled to no relief, no hearing is required under the provisions of the Post Conviction Act.[12]
Our earlier case law shows that we have required a district court to consider the files and records of the case without the benefit of additional testimony taken as evidence for the postconviction action. We believe receiving new evidence at a records hearing would create chaos. Either the State or the prisoner could be unprepared to respond to new evidence. That unpreparedness could result in unnecessary due process challenges from prisoners. And appellate courts would constantly have to backtrack and consider whether an evidentiary hearing was warranted based solely on the allegations and the information contained in the case records and filesa question that the district court should initially address.
But the State argues that in State v. Bazer,[13] we recently affirmed the denial of an evidentiary hearing when the district court received into evidence at a records hearing the deposition of the prisoner and his trial counsel. There, however, both the district court and this court relied solely on the trial records and files to conclude that the prisoner was not entitled to postconviction relief. So while we do not approve of the court's admission of the depositions in Bazer, we had no need to reach the procedural issue there. In contrast, the court here relied on Glover's trial counsel's deposition to conclude that several of Glover's claims were without merit.
Would the court have reached that same result without the benefit of the deposition? We believe not. We are unable to conclude from our review of Glover's case records and files that Glover is not entitled to postconviction relief for any of his claims. This is not surprising. In postconviction actions based on plea-based convictions, much of the needed information is not contained in the record. We remand for an evidentiary hearing for those claims that the district court denied relief by relying on the deposition of Glover's counsel.
REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.
NOTES
[1] See State v. Silvers, 255 Neb. 702, 587 N.W.2d 325 (1998).
[2] See, State v. Jim, 275 Neb. 481, 747 N.W.2d 410 (2008); State v. McLeod, 274 Neb. 566, 741 N.W.2d 664 (2007), citing State v. Dean, 264 Neb. 42, 645 N.W.2d 528 (2002).
[3] See State v. Reid, 274 Neb. 780, 743 N.W.2d 370 (2008).
[4] See, Zahl v. Zahl, 273 Neb. 1043, 736 N.W.2d 365 (2007); Ensrud v. Ensrud, 230 Neb. 720, 433 N.W.2d 192 (1988). Compare, Bump v. Firemens Ins. Co., 221 Neb. 678, 380 N.W.2d 268 (1986); State ex rel. Krieger v. Board of Supervisors, 171 Neb. 117, 105 N.W.2d 721 (1960).
[5] § 29-3001.
[6] See, e.g., State v. Jim, supra note 2.
[7] See id.
[8] See, McLeod, supra note 2; Dean, supra note 2.
[9] See, McLeod, supra note 2; Dean, supra note 2; State v. Flye, 201 Neb. 115, 266 N.W.2d 237 (1978).
[10] See, Dean, supra note 2; State v. Fugate, 180 Neb. 701, 144 N.W.2d 412 (1966).
[11] State v. Flye, supra note 9.
[12] Id. at 119, 266 N.W.2d at 240 (emphasis supplied), citing State v. Woods, 180 Neb. 282, 142 N.W.2d 339 (1966).
[13] State v. Bazer, 276 Neb. 7, 751 N.W.2d 619 (2008).